The document below is hereby signed.

Signed: June 10, 2015



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                                  )
                                       )
STEPHEN THOMAS YELVERTON,              )    Case No. 09-00414
                                       )    (Chapter 7)
                 Debtor.               )
_____)
                                       )
STEPHEN THOMAS YELVERTON,              )
                                       )
                 Plaintiff,            )
                                       )    Adversary Proceeding No.
        v.                             )    14-10046
                                       )
DISTRICT OF COLUMBIA DEPT.             )
OF PUBLIC WORKS,                       )
                                       )    **Not for Publication in**
                 Defendant.            )    **West's Bankruptcy Reporter.**

MEMORANDUM DECISION AND ORDER DENYING
MOTION TO ALTER OR AMEND DECISION PER FRCP, RULE 59(e)

The plaintiff Yelverton's *Motion to Alter or Amend Decision
Per FRCP, Rule 59(e)* (Dkt. No. 16) must be denied for the reasons
elucidated in my decision dismissing this adversary proceeding
and as explained herein.  In dismissing this adversary

proceeding, I held that Yelverton had failed to obtain permission
to pursue the proceeding as required by the *Opinion and Order*
entered on August 6, 2014, in *Stephen Thomas Yelverton v. Wendell
W. Webster*, *et al. (In Re Yelverton)*, Case No. 1:13-cv-1544,
reported at 526 B.R. 429. Alternatively, I held that: (1) the
claim for relief under 11 U.S.C. § 544 (*i.e.*, avoidance of liens
against Yelverton's Mercedes vehicle) was time-barred; and (2)
the District Court's bankruptcy subject matter jurisdiction under
28 U.S.C. § 1334(b), exercised by this court pursuant to referral
by the District Court under District Court Local Bankruptcy Rule
5011-1, did not extend to the nonbankruptcy law claims Yelverton
was pursuing (*i.e.*, his claims for compensatory and punitive
damages for the alleged unlawful conversion, taking, and use of
the vehicle).

The harm that Yelverton clamors to litigate occurred long
ago: his vehicle was impounded by the District of Columbia in
*December 2008* and sold in *March 2009*. The District of Columbia
ought not be required to defend such stale claims; indeed, it is
clear, as described later in this decision, that the statute of
limitations bars Yelverton's claims. In his motion, Yelverton
advances facts not pled in his complaint in favor of finding
subject matter jurisdiction. However, as will be seen, Yelverton
has still failed to advance adequate facts to establish subject
matter jurisdiction, and, in any event, any possible impact on

2

the estate is so remote, speculative, and unlikely to occur that
abstention would be appropriate.

I

### THE COURT PROPERLY VIEWED THE COMPLAINT AS BARRED BASED ON YELVERTON'S FAILURE TO OBTAIN PERMISSION TO FILE THE COMPLAINT

Yelverton contends that I have misinterpreted the District
Court's *Opinion and Order* entered on August 6, 2014, in Case No.
1:13-cv-1544, reported at 526 B.R. 429.  This court, by statute,
is a unit of the District Court and exercises the bankruptcy
subject matter jurisdiction of the District Court.  I adhere to
my interpretation of the District Court's *Opinion and Order*,
requiring pre-filing authorization, as extending to adversary
proceeding complaints filed by Yelverton in this court.

If Yelverton *had* moved this court to permit the filing of
the complaint, the motion would have been deemed referred to this
court to address in the first instance pursuant to District Court
Local Bankruptcy Rule 5011-1, and I would have denied the request
(or, if Fed. R. Bankr. P. 9033 were determined to apply, I would
have recommended to the District Court that the request be
denied) because of the alternative grounds I set forth that would
require dismissal of the proceeding.

II

### THE CLAIMS UNDER 11 U.S.C. § 544(a) ARE TIME-BARRED

The complaint asserts a claim under 11 U.S.C. § 544(a) to
avoid the District's lien and the receipt of the proceeds of that

3

lien, and it sought a recovery of the transferred property under
11 U.S.C. § 550 upon those transfers being avoided.  As noted in
the prior decision, Yelverton is barred by the expiration of the
limitations period of 11 U.S.C. § 546(a) from pursuing his
§ 544(a) claim.[1]  As stated in *Shawhan v. Shawhan (In re
Shawhan),* Nos. NV-08-1049-JuKuK, NV-08-1052-JuKuK, 04-10196, 2008
WL 8462964 at *10 (9th Cir. BAP July 7, 2008):

> If the trustee would be barred by the passage of the
> § 546(a)(1) limitations period, debtor is too as debtor
> does not get greater rights that those of the trustee.
> *See Verner v. Verner (In re Verner)*, 318 B.R. 778, 792
> (Bankr. W.D. Pa. 2005); *In re Steck*, 298 B.R. 244, 248
> (Bankr. D.N.J. 2003); *Schroeder v. First Union Nat'l Bank
> (In re Schroeder)*, 173 B.R. 93, 94 (Bankr. D. Md. 1994),
> *rev'd on other grounds*, 183 B.R. 723 (D. Md. 1995).

Because Yelverton is barred from avoiding the transfers, his
request to recover the transferred property must fail as well.[2]

    Yelverton also contends:

---

[1]  Under 11 U.S.C. § 101(54)(A), the creation of a lien is a
transfer, as is a receipt of proceeds pursuant to enforcement of
the lien.  The power under 11 U.S.C. § 544 to avoid a transfer
is a trustee power.  However, when, as here, the trustee has no
interest in pursuing avoidance of the transfer, 11 U.S.C.
§ 522(h) allows the debtor in certain circumstances to avoid the
transfer **"if – (1) such transfer is avoidable by the trustee
under § 544 . . . ."** (Emphasis added.)  However, because the
limitations period under § 546(a) expired before Yelverton filed
his complaint, the transfer was no longer "avoidable by a
trustee" within the meaning of § 522(h) when the complaint was
filed, and thus § 522(h) does not apply.

[2]  If a transfer *is* avoided under § 522(h), 11 U.S.C.
§ 522(i) allows the debtor to make a recovery, as could a
trustee, under § 550.  Because the transfer will *not* be avoided
under § 522(h), the property transferred cannot be recovered
under §§ 522(i) and 550.

> The Decision, at pp. 7-8, erroneously finds that the Debtor's claims under 11 U.S.C. 544 are beyond the statute of limitations. However, such claims may be filed after the statute of limitations where they are "defensive." *In Re McKensie*, 757 F.3d 1034, 1041 (8th Cir. 2013); *In Re Mclean*, 196 B.R. 679, 676 (Bkrtcy. S.D.N.Y. 1996).

This argument fails. Yelverton appears to have mis-cited *Grant, Konvalinka & Harrison, P.C. v. Still (In re McKenzie)*, 737 F.3d 1034, 1041 (6th Cir. 2013), and *United States Lines, Inc. v. United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 676 (S.D.N.Y. 1996).

*McKenzie* and *McLean Industries* dealt with the use of a trustee's avoidance power in invoking the estate's defense to a proof of claim under 11 U.S.C. § 502(d).[3] Section 502(d) essentially provides for disallowance of a claim if the creditor has not undone an avoidable transfer. The majority position (exemplified by *McKenzie* and *McLean Industries*) holds that in objecting to a claim pursuant to § 502(d), the trustee may invoke the avoidability of the claim even though the trustee would be

---

[3]  Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

unable to avoid and recover the transfer at issue because the statute of limitations contained in 11 U.S.C. § 546(a)(1) bars avoidance of the transfer.

Unlike the trustees in *McKenzie* and *McLean Industries*, Yelverton is not using an avoidance power defensively under 11 U.S.C. § 502(d) in objecting to a proof of claim.  Instead, Yelverton's complaint seeks affirmative relief: avoidance of all liens against the vehicle and compensatory damages.  Yelverton's § 544(a) claims are barred by the statute of limitations because they seek affirmative relief, not defensive relief under § 502(d).

III

YELVERTON'S CONTENTIONS REGARDING
HIS NONBANKRUPTCY LAW CLAIMS ARE MERITLESS

Yelverton next contends:

> The Decision, at pp. 7-8, erroneously finds that the Debtor's state law claims are unrelated to the Bankruptcy and are beyond the statute of limitations. However, they are claims for continuing Torts for damages to property of the Estate, and thereby the proceeds would go to the Estate to pay Creditors.  Although the Debtor filed for an Exemption of this property from the Estate, the Exemption was never recognized by the Bankruptcy Court. But as Exempt property, the proceeds would nevertheless go to a coowner of the property, Alexandra Senyi de Nagy-Unyom, who is a Creditor of the Estate as to the property.

These contentions include erroneous statements that can be readily brushed aside:

- The court specifically did not decide whether the

nonbankruptcy law claims were untimely;[4] instead, it
held that the court lacked subject matter jurisdiction
over the nonbankruptcy law claims.

- It is untrue that an exemption claim "was never
recognized by the Bankruptcy Court."[5]

- The state law claims have been abandoned *in toto* to
Yelverton and thereby ceased to be property of the
estate being administered by the chapter 7 trustee.  In
turn, the proceeds of those claims will not belong to
the estate, and thus they are not proceeds that the
chapter 7 trustee would potentially distribute to
creditors after paying administrative claims.  Any
recovery in this proceeding would belong to Yelverton,
and it is thus untrue that "the proceeds would go to
the Estate to pay Creditors."

That leaves Yelverton's contention that the court erred in
finding no subject matter jurisdiction over the nonbankruptcy law

---

[4]  However, as discussed later, it is clear that the claims
*are* time-barred.

[5]  As noted above, this court held:

The nonbankruptcy law litigation claims (or, more
precisely, the portion of their value claimed to be
exempt) became exempted from the estate pursuant to 11
U.S.C. § 522(l).

*Yelverton v. D.C.*, Adv. Pro. No. 10-10045 (Dec. 4, 2013)
(*Memorandum Decision on Remand*, p. 12).

7

claims and specifically erred in that regard because "the
proceeds would nevertheless go to a coowner of the property,
Alexandra Senyi de Nagy-Unyom, who is a Creditor of the Estate as
to the property."  In part IV, below, I address why, despite this
contention, I did not err in concluding that the complaint failed
to establish subject matter jurisdiction, and I note that even if
there were subject matter jurisdiction, Yelverton's nonbankruptcy
law claims against the District of Columbia would appropriately
be claims as to which the court should abstain.

In part V, below, I observe that Yelverton has failed to
allege facts establishing that he has any enforceable
nonbankruptcy claims against the District.  This presents another
reason why (pursuant to the *Opinion and Order* entered on August
6, 2014, in *Stephen Thomas Yelverton v. Wendell W. Webster*, *et
al. (In Re Yelverton)*, Case No. 1:13-cv-1544) permission should
not be given to Yelverton to file the complaint.

Finally, in part VI, below, I address why the abandonment to
Yelverton of the claims against the District of Columbia had no
retroactive effect on the statutes of limitations that bar his
claims.

IV

**THERE WAS NO ERROR IN CONCLUDING THAT THE COMPLAINT DID NOT
ESTABLISH SUBJECT MATTER JURISDICTION, AND ABSTENTION WOULD
BE APPROPRIATE EVEN IT THERE WERE SUBJECT MATTER JURISDICTION**

The court appropriately concluded that the complaint failed to establish subject matter jurisdiction.  None of the additional facts he now advances would establish such jurisdiction, and, in any event abstention would be appropriate if there were jurisdiction.

A.

**YELVERTON DID NOT PLEAD FACTS
ESTABLISHING SUBJECT MATTER JURISDICTION**

Under Fed. R. Civ. P. 8(a), Yelverton was required to plead in his complaint facts establishing that this court had subject matter jurisdiction over his claims.  *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in his pleading the facts essential to show jurisdiction.").  This he failed to do.

Yelverton's complaint did not plead what he now alleges, namely, that "the proceeds would nevertheless go to a coowner of the property, Alexandra Senyi de Nagy-Unyom, who is a Creditor of the Estate as to the property."  If he thinks that subject matter jurisdiction can be premised on that, he needs to seek leave to file a complaint that *does* include those allegations.

For reasons explored below, even if Yelverton were to file a motion for leave to file a complaint that included those

9

allegations, and leave were granted to allow the complaint to be
filed, the complaint would not survive a motion to dismiss.[6]

B.

YELVERTON HAS NOT SHOWN THAT THE CLAIMS ARE
RELATED TO THE BANKRUPTCY CASE BASED ON HIS NEW ALLEGATIONS

Yelverton's nonbankruptcy law claims did not arise in the
bankruptcy case and did not arise under the Bankruptcy Code.  If
subject matter jurisdiction exists here under the pertinent
statute, 28 U.S.C. § 1334(b), it could only exist if the claims
are "related to" the bankruptcy case.  Yelverton's complaint
failed to plead facts establishing "related to" jurisdiction.

Yelverton's nonbankruptcy law claims against the District,
which were estate property, were abandoned to him in December
2014.[7]  For purposes of Yelverton's standing to pursue this
adversary proceeding, I will assume in Yelverton's favor (and

---

[6]   Yelverton's track record of filing meritless cases
requires, pursuant to the *Opinion and Order* entered on August 6,
2014, in *Stephen Thomas Yelverton v. Wendell W. Webster*, *et al.
(In Re Yelverton)*, Case No. 1:13-cv-1544),  that he present a
complaint that sets forth facts establishing a basis for
jurisdiction before he can be allowed to file the complaint.

[7]   Prior to the abandonment, Yelverton claimed a fixed
dollar amount exemption with respect to the claims, but despite
that exemption the estate remained the owner of the claims with
Yelverton having only a right to recover, from the proceeds of
the claims, his claimed exemption amount.  *See Schwab v. Reilly*,
560 U.S. 770, 792 (2010) (when a debtor claims a dollar amount of
an asset exempt, and the exemption is allowed, "title to the
asset will remain with the estate pursuant to § 541, and the
debtor will be guaranteed a payment in the dollar amount of the
exemption").

without deciding the issue) that the abandonment is to be treated
as retroactively effective as of the date of the commencement of
this adversary proceeding in October 2014.   The claims ceased to
be property of the estate upon their abandonment.   Accordingly,
the complaint must be viewed as pursuing claims that are not
property of the estate.

As observed in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308
n.6 (1995), the courts of appeals that have addressed the
question of "related to" jurisdiction agree that there is no
"related to" jurisdiction over "proceedings that have no effect
on the estate of the debtor."   *See, e.g., Pacor, Inc. v. Higgins*,
743 F.2d 984, 994 (1984) ("An action is related to bankruptcy if
the outcome could alter the [estate's] rights, liabilities,
options, or freedom of action (either positively or negatively)
and which in any way impacts upon the handling and administration
of the bankrupt estate."); *Elscint, Inc. v. First Wisc. Fin.
Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987) (a
proceeding is "related to" the case if "it affects the amount of
property available for distribution or the allocation of property
among creditors") (internal citations omitted).   Accordingly,
when property leaves the bankruptcy estate, the bankruptcy
court's jurisdiction typically lapses.   *Id.; In re Hall's Motor
Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989).

Yelverton's complaint pled no facts showing that this

11

adversary proceeding fits within an exception to the typical

outcome noted in *Hall's Motor Transit*.  As I noted in a previous

decision:

> [A]ny recovery by the debtor as the owner of the claims
> would have no apparent impact on the administration of
> the estate (the test for determining whether there is
> "related to" jurisdiction).  *See Turner v. Ermiger (In re
> Turner)*, 724 F.2d 338 (2d Cir. 1983) (decided under
> similar jurisdictional statute); *In re McClellan*, 99 F.3d
> 1420, 1422-23 (7th Cir. 1996); *Ostroff v. Am. Home Mortg.
> (In re Ostroff)*, 433 B.R. 442 (Bankr. D.D.C. 2010) (no
> jurisdiction to adjudicate debtor's state law claim of
> lien invalidity on exempt property).  *See also Ludwig &
> Robinson, PLLC v. Yelverton Law Firm, PLLC (In re
> Yelverton)*, 2011 WL 1628046 (Bankr. D.D.C. Apr. 28,
> 2011).

*Yelverton v. D.C.*, Adv. Pro. No. 10-10045 (Dec. 4, 2013)

(*Memorandum Decision on Remand*, p. 11).  As I noted in *Ostroff*:

> Section 1334(b) does not grant jurisdiction over
> proceedings that solely affect property that a debtor has
> exempted from the estate.  *Turner v. Ermiger (In re
> Turner)*, 724 F.2d 338 (2d Cir. 1983); *see also In re
> McClellan*, 99 F.3d 1420, 1422-23 (7th Cir. 1996); *In re
> Graziadei*, 32 F.3d 1408, 1410 n.2 (9th Cir. 1994)
> (bankruptcy court lacked subject matter jurisdiction to
> order that fees owed to his former spouse's attorney
> pursuant to a postpetition divorce decree be paid out of
> proceeds of exempt property); *Menotte v. United States
> (In re Garcia)*, 2002 WL 31409580 (S.D. Fla. 2002).

433 B.R. at 449.

C.

YELVERTON HOLDS NO CLAIM AGAINST THE
ESTATE FOR WHICH DISTRIBUTIONS FROM THE ESTATE
COULD BE AFFECTED BY WHAT HE RECOVERS FROM THE DISTRICT

This adversary proceeding is not one by *a creditor* against a

third party as to which a recovery by that creditor from the

12

third party would eliminate the creditor's claim against the estate, and thereby increase distributions to other creditors, such that "related to" jurisdiction exists. *See In re Xonics, Inc.*, 813 F.2d at 131-32 ("related to" jurisdiction exists if the plaintiff's recovery "would affect the recoveries of other creditors").[8]  Instead, it is a proceeding by Yelverton (who is *not* a creditor of the estate) against a third party, the District of Columbia.  The proceeds of the proceeding would belong to Yelverton, not to a creditor.  Yelverton is the debtor in his bankruptcy case, not a creditor, and thus he holds no claim against the estate that could be eliminated via a recovery by him from the District.  Accordingly, his recovery, to paraphrase *Xonics*, is not one that would affect the recoveries of creditors from the estate.  Even if there were a surplus in the bankruptcy estate payable to Yelverton after all creditors' claims are fully satisfied, the amount of that surplus would be unaffected by the amount of Yelverton's recovery from the District.

---

[8]  *See also Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012);  Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 Wm. & Mary L. Rev. 743, 901 n.559 (2000) (collecting similar decisions); Jack Zarin-Rosenfeld, *Designing Related-to Bankruptcy Jurisdiction,* 89 N.Y.U.L. Rev. 390, 398 n.34 (Apr. 2014) (same).

D.

YELVERTON'S NEW ALLEGATIONS REGARDING SENYI
DO NOT SUFFICE TO ESTABLISH "RELATED TO" JURISDICTION

Yelverton contends that "the proceeds would nevertheless go
to a coowner of the property, Alexandra Senyi de Nagy-Unyom, who
is a Creditor of the Estate as to the property."  Yelverton did
not include that allegation in his complaint.  Even if he had,
the allegation would not have sufficed to establish "related to"
subject matter jurisdiction for two reasons.

First, Yelverton pled no facts establishing that Senyi is a
co-owner of "the property."  Even if Yelverton could establish
that Senyi is a co-owner of the claims against the District, or
has a claim against the District because she had an co-ownership
interest in the motor vehicle the District seized, her recovery
would belong to her as an owner, and not as a creditor of
Yelverton.  That would have no impact on the administration of
the estate.

Second, even if the proceeds somehow went to Senyi in her
capacity as a creditor of the estate holding nondischargeable
claims, Yelverton has not articulated how that could have an
impact upon the administration of the estate.  Senyi would be
entitled to collect her nondischargeable claims by executing on
any recovery by Yelverton from the District of Columbia (assuming
no other entity beat her to the punch in obtaining a judgment and
executing), but because of the respective amounts of monies at

14

stake, Yelverton has not shown that Senyi would receive full satisfaction of her allowed claims from the proceeds of any recovery by Yelverton against the District of Columbia.  And, crucially, only *full* satisfaction of Senyi's allowed claims would eliminate her claims as claims against the estate entitled to a pro rata distribution, because until she has fully collected her claims (from the estate and from any non-estate sources), her pro rata distribution from the estate would be based on the allowed amount of her claims without regard to the amounts collected from non-estate sources.  *See, e.g., In re Del Biaggio*, 496 B.R. 600, 603 (Bankr. N.D. Cal. 2012) (citing *Ivanhoe Bldg. & Loan v. Orr*, 295 U.S. 243 (1935), for the proposition that "the amount [of] the creditor's claim in the bankruptcy case is not affected by third-party payments, except to the extent payment from the [estate] would produce a double recovery").

Examining the amounts and attributes of Senyi's claims makes this clearer.  Yelverton has not alleged that *full* satisfaction of Senyi's nondischarged claims against the estate will occur via distributions in the case and via Senyi's collecting from Yelverton any funds he recovers from the District, and it is doubtful that he could allege that because:

- The only apparent meaningful asset of the estate is a
    $110,000 settlement the trustee reached with
    Yelverton's siblings, and because approval of that

15

settlement has necessitated the trustee's having
counsel,[9] and because the trustee has had counsel
address other litigation in the case, it is likely that
a substantial portion of that $110,000 will be consumed
by administrative claims before there is any
distribution to creditors like Senyi.

- Yelverton's complaint against the District seeks only
damages of at least $18,900, plus interest, and
punitive damages of at least $250,000.

- But Senyi is owed nondischargeable claims consisting of
$329,000 in spousal support claims (for the period
prior to the parties' divorce), and alimony claims of
$17,000 per month (so long as Senyi remained single)
accruing after the conversion of the case to chapter
7.[10]

- For years, Yelverton has repeatedly sought waivers of
appeal fees in his bankruptcy case and related
adversary proceedings, claiming that he has

---

[9]   This court approved that settlement, the District Court
affirmed this court's orders dealing with the approval of the
settlement, and the Court of Appeals affirmed the District
Court's ruling by a per curiam order in *Yelverton v. Webster (In
re Yelverton)*, Case No. 14-7147, 2015 WL 1606965 (D.C. Cir. Mar.
9, 2015).

[10]   *See Memorandum re Cross-Motions for Summary Judgment* of
September 24, 2012, in *Yelverton v. Senyi de Nagy-Unyom (In re
Yelverton)*, Adversary Proceeding No. 12-10011 (Bankr. D.D.C.),
reported at 2012 WL 4434087.

insufficient income and assets to pay the fees.

Accordingly, it is not likely he has been able to make

any payment on the nondischargeable claims.

Because (a) Senyi's proof of claim (by reason of *Ivanhoe Bldg. &*

*Loan*) would entitle her to a pro rata distribution from the

estate based on the total amount of her allowed claims until she

fully recovers the aggregate amount of those claims[11] and (b)

Yelverton has not suggested (and could not seriously suggest)

that the point would be reached that pro rata distributions to

Senyi (in combination with Senyi's recoveries on her

nondischarged claims from Yelverton's recoveries from the

District) would result in her having been paid more than the full

amount of her allowed claims against the estate, then (c) any

collection by Senyi of any recovery by Yelverton against the

District of Columbia will not impact the administration of the

---

[11]    Senyi and Yelverton were divorced on August 11, 2010.
The debtor's case was converted to chapter 7 on August 20, 2010.
However, the Superior Court delayed the effective date of its
judgment for 30 days.  Most or all of the $329,000 claim for pre-
divorce support arose before the conversion of this case to
chapter 7 on August 20, 2010, and thus most or all of the
$329,000 claim was properly asserted against the estate.  *See* 11
U.S.C. §§ 348(d) and 502(b)(5).  However, the $17,000 per month
of alimony that accrued after conversion of the case to chapter 7
is not a proper claim against the estate.  *See* 11 U.S.C.
§ 502(b)(5).  Senyi is entitled to collect her post-conversion
claims (which are *not* allowed claims against the estate) before
collecting her pre-conversion claims that *are* allowed claims
against the estate.

estate.[12]

E.

EVEN IF YELVERTON HAD PLED FACTS SHOWING THAT SENYI'S
COLLECTION OF FUNDS COULD AFFECT DISTRIBUTIONS TO OTHER
CREDITORS, THAT POSSIBILITY IS SO SPECULATIVE AND INDIRECT
THAT IT IS QUESTIONABLE WHETHER "RELATED TO" JURISDICTION
WOULD EXISTS, AND DISCRETIONARY ABSTENTION WOULD BE APPROPRIATE

Even disregarding the foregoing deficiencies in Yelverton's
attempt to show that "related to" jurisdiction exists, there is
serious doubt that his reliance on the speculative possibility
that Senyi might collect the proceeds of this proceeding (and
that down the road such collection might affect distributions to
other creditors in the case) could suffice to establish "related
to" jurisdiction.  As noted in *Pacor*, "[t]here must be some nexus
between the 'related' civil proceeding and the title 11 case,"
743 F.2d at 994, and as observed in *Celotex*, 514 U.S. at 308, "a
bankruptcy court's 'related to' jurisdiction cannot be

---

[12]  Senyi has also asserted prepetition claims of a
dischargeable character, but Yelverton has objected to the
allowance of those claims.  To the extent those claims are
allowed, the recoveries from the District of Columbia would not
affect those claims, and the assets of the estate, after
administrative claims are paid, would almost certainly not
suffice to pay those claims.  In that event, the claims against
the District would have no impact on the administration of the
estate, and there could not be subject matter jurisdiction over
the claims against the District.

Yelverton also objected to Senyi's claims of a
nondischargeable character (the claims for spousal support pre-
divorce and for alimony afterwards), but after he filed his
objection to those claims, the Superior Court upheld Senyi's
right to spousal support pre-divorce, and her right to alimony.

limitless."  If there were "related to" jurisdiction here over
the claims against the District for the reason that Senyi might
collect from Yelverton the proceeds of the claims, and in turn
that this could affect the administration of the estate, there
would then be "related to" jurisdiction over:

- litigation of *any* monetary claims that Yelverton might
  pursue in the future (including monetary claims arising
  after the bankruptcy case commenced, such as
  Yelverton's claims for work performed postpetition);
  and

- any action that Senyi might bring to recover her claim
  from other assets that Yelverton might accumulate in
  the future

because the proceeds of such future litigation could be used to
pay Senyi's claim.  "Related to" jurisdiction does not extend
that far: the impact must be more direct.  *See In re FedPak
Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ("[C]ommon sense
cautions against an open-ended interpretation of the 'related to'
statutory language 'in a universe where everything is related to
everything else.'") (citing Gerald T. Dunne, *The Bottomless Pit
of Bankruptcy Jurisdiction*, 112 Banking L.J. 957 (Nov.–Dec.

1995)).[13]  Here, Yelverton has pled no facts showing that entry

of a monetary judgment in favor of Yelverton against the District

will alter any rights of the estate and directly affect the

administration of the estate.

Senyi's potential collection from Yelverton of whatever he

recovers from the District is at least one step removed from this

adversary proceeding and is not certain to occur: some other

postpetition creditor might seize the funds.  Senyi's potential

collection of the funds thus lacks that direct nexus to the

estate that is required for "related to" jurisdiction to exist.

To import the phrasing of *Pacor*, 743 F.2d at 995, Yelverton's

recovering a monetary judgment in this proceeding against the

District is "[a]t best . . . a mere precursor to the potential"

second step of Senyi (instead of someone else) then obtaining the

---

[13]  Consider, by way of analogy, *Tower Auto. Mex., S. De R.L. De C.V. v. Grupo Proeza, S.A. De C.V. (In re Tower Auto., Inc.)*, 356 B.R. 598, 602 (Bankr. S.D.N.Y. 2006) ("[A] debtor's distributable assets might consist exclusively of the stock of a multinational corporation, but that happenstance would not give the bankruptcy court jurisdiction of a patent or antitrust dispute involving that corporation, no matter how important to its financial well-being."). *See also Eastjun Coop., LLC v. Spike Club LLC (In re Wilson)*, Adv. Pro. No. 13-10019, 2013 WL 3880053, at *1-2 (Bankr. D.D.C. July 25, 2013).  The contrary holding in *8300 Newburgh Rd. P'ship v. Time Constr., Inc. (In re Time Constr., Inc.)*, 43 F.3d 1041, 1045 (6th Cir. 1995), is based on unpersuasive, skimpy reasoning and logically has no limits as it would require a court to find "related to" jurisdiction over litigation against any corporation in which the debtor held a share whose value could be impacted by the litigation.  "Related to" jurisdiction is not that limitless.

proceeds of that monetary judgment for application to her nondischargeable claim against Yelverton. That type of indirect potential of an impact on the estate is insufficient under *Pacor* to support a finding of "related to" jurisdiction. "Mere potential impact upon the debtor's estate is insufficient." *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003). *See also Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) (defining "related to" as meaning "likely to affect").

However, it has been suggested by at least one commentator that such a restrictive reading of the "related to" language is inconsistent with the goals of the statute and that any concerns about the uncertainty that the litigation will have an impact on the administration of the estate should be addressed instead by way of abstention. *See* Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 Wm. & Mary L. Rev. 743 (2000). Some courts have agreed and have held that *Pacor* was too restrictive in this regard. *See, e.g., Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 491 (6th Cir. 1996) ("It has become clear following *Pacor* that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction."); *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d

21

325, 330 (8th Cir. 1988) ("related to" jurisdiction can exist

over a third-party proceeding that "portends a mere contingent or

tangential effect on a debtor's estate").  However, even if Senyi

were to recover from Yelverton any funds he recovers from the

District of Columbia, and even if that speculative possibility

could suffice to establish "related to" jurisdiction, it is

extremely unlikely that Senyi's recovery could have any impact

upon the administration of the estate (because, as discussed

above, Yelverton has not pled facts showing that Senyi would

likely recover enough for full satisfaction of her claims), and

thus the proceeding would be an obvious candidate for the

exercise of permissive abstention, as discussed next.

    The nature and circumstances of this case would make

abstention under 28 U.S.C. § 1334(c)(1) warranted even if

"related to" jurisdiction existed.  This is not a case under

chapter 11 of the Bankruptcy Code in which a confirmed plan was

formulated with the view that any creditor's recovery from

another source would be treated as reducing the creditor's claim

against the estate even if the claim were not fully paid.  *See In

re Xonics, Inc.*, 813 F.2d at 131-32.  Instead, it is a chapter 7

case in which the chapter 7 trustee will make whatever

distribution is appropriate at the time he files a final report.

Creditors have waited a long time for a distribution.  For

reasons already discussed, it is extremely unlikely that

22

Yelverton's recovery from the District could have an impact on the administration of the estate even if the recovery were in turn executed upon by Senyi towards collection of her nondischarged claims.

A court must bear in mind the command of 11 U.S.C. § 704(a)(1) that the trustee "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." Awaiting the outcome of Yelverton's claims against the District, when the likelihood of those claims having any impact on the administration of the estate is highly speculative and highly unlikely to occur, would not be compatible with the best interests of creditors.

In short, the possibility that the proceeds of the proceeding might be paid to Senyi; the possibility that, in turn, her nondischarged claims would be paid in full; and the possibility, in turn, that this could affect distributions to other creditors are possibilities that are entirely too remote, speculative, and unlikely to occur to warrant exercising jurisdiction over the proceeding even if Yelverton could establish that "related to" jurisdiction exists.

V

YELVERTON HAS NOT ALLEGED FACTS
ESTABLISHING ANY ENFORCEABLE NONBANKRUPTCY LAW CLAIMS

Yelverton, in any event, has failed to allege facts

establishing that he has any enforceable nonbankruptcy law claims against the District.

### A.

First, as to claims arising under District of Columbia law, Yelverton has not pled facts showing that, under D.C. Code § 12-309,[14] any such claim ever accrued.  The auction sale at issue was held on May 19, 2009.  Yelverton's complaint makes evident that it is one for unliquidated damages but he does not plead he gave notice in writing to the Mayor as required by § 12-309.  When a plaintiff has failed to give the Mayor such notice, no cause of action accrues.  *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981) ("[U]nless timely notice is given, no 'right of action' or 'entitlement to maintain an action' accrues.").  Section 12-309 "imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is 'mandatory as a prerequisite to filing suit against the District.'"  *District of Columbia v.*

---

[14]   D.C. Code § 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

*Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (quoting *Hardy v.*
*District of Columbia*, 616 A.2d 338, 340 (D.C. 1992)).
Accordingly, Yelverton's failure to plead timely compliance with
§ 12-309 results in his having not pled a cause of action that
has accrued and would require that his common law tort claims
under D.C. law against the District be dismissed.

B.

Yelverton also invokes 42 U.S.C. § 1983, a federal statute
as to which D.C. Code § 12-309 (the mayor notice requirement)
does not apply.  However, he has not pled a valid claim under
§ 1983, which provides a cause of action for persons deprived of
their constitutional or federal statutory rights "under color of
any statute, ordinance, regulation, custom, or usage, of any
State or Territory or the District of Columbia."  As observed in
*Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 58 (D.D.C.
2009):

> In order to hold a municipality liable for the civil
> rights violations of its employees under 42 U.S.C.
> § 1983, a plaintiff must show not only a violation of his
> rights under the Constitution or federal law, but also
> that the municipality acted in accordance with a
> government custom or policy. *Monell v. Dep't of Social
> Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611
> (1978); *accord Rogala v. District of Columbia*, 161 F.3d
> 44, 56 (D.C. Cir. 1998) (applying *Monell* to the District
> of Columbia); *Sanders v. District of Columbia*, 522 F.
> Supp. 2d 83, 88 (D.D.C. 2007) (same).  A plaintiff must
> demonstrate an affirmative link between the District's
> policy and the constitutional violation alleged. *Carter
> v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir.
> 1986).  A single incident is insufficient to impose such
> liability. *Reed v. District of Columbia*, 474 F. Supp. 2d

25

163, 168 (D.D.C. 2007); *see also Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987) ("One instance, however egregious, does not a pattern or practice make.").

Yelverton's complaint is devoid of any allegations of the District's employees having acted in accordance with a government custom or policy.

C.

Yelverton also appears to have pled constitutional torts against the District, but these claims and the § 1983 claims are barred by the statute of limitations.  When no federal statute contains a statute of limitations for such claims, the appropriate statute of limitations for a federal civil rights or constitutional tort is the most analogous state statute of limitations.  See *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  Civil rights and constitutional tort claims are subject to the same statute of limitations as state personal injury actions.  *See Wilson v. Garcia*, 471 U.S. 261, 279 (1985), *abrogated on other grounds as recognized by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-83 (2004).  Under D.C. Code § 12-301, the three possibly analogous statutes of limitations each fix a three-year deadline to pursue an action

after accrual of the right to maintain the action.[15]

Accordingly, Yelverton was required to sue on his claim within three years after it accrued.[16]

While state law provides the applicable statute of limitations, federal law controls when federal claims accrue. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

Yelverton's federal claims accrued at the time of the

---

[15]   D.C. Code § 12-301 provides in relevant part that the limitations period is:

> (2) for the recovery or personal property or damages for its unlawful detention–3 years;
> .   .   .
> (3) for the recovery of damages for an injury to real or personal property–3 years;
> .   .   .
> (8) for which a limitation is not otherwise specially prescribed–3 years[.]

[16]   *See Savage v. District of Columbia*, No. 02-7135, 2003 WL 843326, at *1 (D.C. Cir. Feb. 25, 2003) ("The district court properly applied a three-year statute of limitations in this case brought pursuant to 42 U.S.C. § 1983."); *Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) ("[I]n states with multiple statutes of limitations, claims under section 1983 are governed by the residual or general personal injury statute of limitations ....."); *McDonald v. Salazar*, 831 F. Supp. 2d 313, 319-20 (D.D.C. 2011) (applying the 3-year limitations period of D.C. Code § 12-301(8) instead of the shorter limitations period in D.C. Code § 12-301(4) for "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment" to a *Bivens* claim).

seizure and auction of the car more than three years before
Yelverton filed this adversary proceeding.  Each discrete act
gives rise to a separate claim for purposes of the statute of
limitations; no "continuing violation doctrine" applies.  *See
Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344
F.3d 822, 829 (9th Cir. 2003).  Accrual occurs "when the
plaintiff has a complete and present cause of action." *Wallace*,
549 U.S. at 388 (internal citations and quotation marks omitted).
*See also Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)
("The claim accrues when the plaintiff knows or has reason to
know of the harm.") (internal citations and quotation marks
omitted); *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951,
955 (4th Cir. 1995) (en banc) ("Under federal law a cause of
action accrues when the plaintiff possesses sufficient facts
about the harm done to him that reasonable inquiry will reveal
his cause of action."); *Sameric Corp. of Del., Inc. v. City of
Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (same).  Here, Yelverton
should have known of the injury shortly after the seizure and
auction of the car, which occurred more than three years before
he filed his adversary complaint, and there is no continuing
tort.

In short, Yelverton's complaint is precisely the type of
frivolous filing that the District Court intended to be screened
out by its *Opinion and Order* entered on August 6, 2014, in

*Stephen Thomas Yelverton v. Wendell W. Webster, et al. (In Re*

*Yelverton)*, Case No. 1:13-cv-1544.

VI

THE NONBANKRUPTCY LAW CLAIMS
CANNOT BE TREATED AS NOT BARRED BY THE STATUTE OF
LIMITATIONS BASED ON THE RECENT ABANDONMENT OF THE CLAIMS

Yelverton also contends:

The Decision, at p. 7, erroneously finds that the Debtor
had "slept on his rights" to compel an Abandonment from
the Chapter 7 Trustee.  However, there  is no time limit
on Abandonment during the Bankruptcy.  See, 11 U.S.C.
554.

He undoubtedly makes that assertion as a basis for urging that

abandonment rolled back the effective date of the assertion of

the claims retroactively to a date making the assertion of the

claims timely under any statute of limitations.  Abandonment did

*not* have that effect.

A.

Yelverton is correct that he was not time-barred from

obtaining an abandonment of nonbankruptcy law causes of action

that were property of the estate.[17]  In saying that he slept on

---

[17]  Yelverton also delayed pursuing his claim under 11
U.S.C. § 522(h) and § 544 to avoid the transfer to the District,
with the consequence that such claim became time-barred by 11
U.S.C. § 546 for reasons discussed earlier.  (Yelverton became
entitled to pursue that claim by way of § 522(h), not by way of
abandonment: even though an interest in property recovered by the
trustee, or preserved for the benefit of the estate, pursuant to
an avoidance power is property of the estate under 11 U.S.C.
§ 521(a)(3) and (4), the avoidance powers themselves are not
property of the estate.)

his rights in pursuing abandonment I was merely noting that
Yelverton's delay had led to the District of Columbia raising the
defense of untimeliness.[18]  Ultimately, because there was no
subject matter jurisdiction over the abandoned nonbankruptcy law
claims, I found it unnecessary to address whether pursuit of
those nonbankruptcy law claims was time-barred.  However, as
explored previously, the claims *are* time-barred.

B.

Assuming, hypothetically, that this court would have subject
matter jurisdiction over Yelverton's pursuit of the abandoned
nonbankruptcy law claims in this adversary proceeding, Yelverton
would likely argue that the doctrine regarding the retroactive
effect of abandonment would make his claims timely if the statute
of limitations had expired before he commenced the adversary
proceeding.  However, such an argument would fail because
retroactivity cannot undo the untimeliness of a proceeding that
was barred by the statute of limitations when it was filed.  The
retroactivity doctrine is this: upon abandonment of a property

---

[18]  By the time Yelverton secured an abandonment, a final
judgment had already been entered dismissing the first adversary
proceeding he brought against the District on the entirely
appropriate grounds that he lacked standing to pursue that
adversary proceeding.  As a dismissed adversary proceeding, that
first adversary proceeding was no longer a vehicle for pursuing
the abandoned claims.  If he was to pursue the abandoned claims,
he was required to pursue them in a new proceeding in a court of
competent jurisdiction, but by the time the abandonment occurred
he was likely time-barred from pursuing the abandoned claims.

from the estate in a bankruptcy case, title to the abandoned property reverts to the debtor, as of the petition date, so that she is treated as having owned it continuously. *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010). Thus, if:

> (1) after the filing of a bankruptcy case the debtor timely commenced an adversary proceeding (or other civil action) on a cause of action when only the trustee had standing to pursue the cause of action, and

> (2) the proceeding has not been dismissed, prior to abandonment, based on the debtor's lack of standing,

then the abandonment retroactively confers standing on the debtor to pursue the cause of action in the pending adversary proceeding (or other pending civil action) as of the debtor's filing of the proceeding. *Barletta v. Tedeschi*, 121 B.R. 669, 673 (N.D.N.Y. 1990). *See also Williams v. United Tech. Carrier Corp.*, 310 F. Supp. 2d 1002, 1011-12 (S.D. Ind. 2004).

However, the retroactive effect of abandonment of a property does not roll back the clock to undo the lack of a timely complaint or other consequences adverse to the debtor that have arisen prior to abandonment regarding that property. *See United States v. Grant*, 971 F.2d 799, 805-06 (1st Cir. 1992) (en banc) (rejecting a debtor's argument that the relation back doctrine was available to defend a criminal prosecution for concealing property from a trustee in bankruptcy); *In re Salander*, 450 B.R.

37, 51–52 (Bankr. S.D.N.Y. 2011) (retroactive effect of
abandonment of real property to petition date did not undo a
postpetition release, pursuant to an approved settlement, of
claims relating to the real property).

Accordingly, if the statute of limitations has run on a
cause of action without a timely civil action having been
commenced, that running of the statute of limitations is not
undone by the retroactive effect of abandonment of the cause of
action. As observed in *Wallace v. Lawrence Warehouse Co.*, 338
F.2d 392, 394 n.1 (9th Cir. 1964), relation back "is a fiction,
and a fiction is but a convenient device, invented by courts to
aid them in achieving a just result. It is not a categorical
imperative, to be blindly followed to a result that is unjust."[19]
If the statute of limitations ran before Yelverton commenced this
adversary proceeding, it would be unjust to treat the
retroactivity doctrine as making the adversary proceeding timely:

---

[19] Similarly, as I held in *Yelverton v. District of
Columbia (In re Yelverton)*, Adv. Pro. No. 10-10045, 2014 WL 29671
(Bankr. D.D.C. Jan. 3, 2014), *aff'd*, 2014 WL 5002101 (D.D.C. Oct.
7, 2014), in dismissing Yelverton's first adversary proceeding
against the District, the retroactive effect of abandonment does
not undo a final order, prior to abandonment, dismissing a civil
action for lack of standing. Even though retroactivity decisions
could be viewed as deeming the debtor to have been the owner of
abandoned cause of action all along, retroactivity does not undo
the propriety of the court having dismissed Yelverton's first
adversary proceeding based on the debtor having lacked standing
when the order of dismissal was entered. That dismissed earlier
adversary proceeding cannot be treated as a basis for treating
this second adversary proceeding as filed when the earlier
adversary proceeding was filed.

the District would be subjected to claims that long ago became
stale and as to which Yelverton slept on his rights to put
himself in a posture to pursue the claims in a timely fashion.

C.

Yelverton may attempt to revisit the dismissal of prior
efforts he made to sue the District of Columbia, but the orders
effecting dismissal of those efforts are final judgments not
subject to being vacated.  Yelverton not only obtained an
abandonment of some of his claims against the District, he also
previously exempted a portion of the claims that were property of
the estate.  As this court previously noted in Yelverton's first
adversary proceeding against the District:

> [O]n July 26, 2012, more than a year after the adversary
> proceeding was dismissed, Yelverton filed in his
> bankruptcy case an amended Schedule C, which asserted,
> for the first time, an exemption claim regarding the
> nonbankruptcy law claims in this litigation.  The claim
> of exemption listed the value of the nonbankruptcy law
> claims in this adversary proceeding as $135,000 and
> listed the value of the claimed exemption as $67,500.  No
> one timely objected to that exemption claim.  See Fed. R.
> Bankr. P. 4003(b)(1).  The nonbankruptcy law litigation
> claims (or, more precisely, the portion of their value
> claimed to be exempt) became exempted from the estate
> pursuant to 11 U.S.C. § 522(l).

*Yelverton v. D.C.*, Adv. Pro. No. 10-10045 (Dec. 4, 2013)

(*Memorandum Decision on Remand*, p. 12).  Like the later

abandonment of the claims against the District, the exemption of

$67,500.00 of the potential proceeds of the claims could not

resuscitate an adversary proceeding that was already dismissed

(Adv. Pro. No. 10-10045) nor alter the untimeliness of the pursuit in this adversary proceeding of the claims that were the subject of the exemption claim.

It was only upon abandonment of the claims that Yelverton became entitled to pursue the abandoned claims against the District.[20]  In contrast to an abandonment of property, or an exemption of the entirety of a property, an exemption of only a fixed dollar amount of the value of a property is not an exemption of the asset itself and leaves title to the asset in the estate.  *See Schwab v. Reilly*, 560 U.S. 770, 792 (2010) (when a debtor claims a dollar amount of an asset exempt, and the exemption is allowed, "title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption").  Because such an asset remains property of the estate, the trustee retains the

_____

[20]  *See Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1279-80 (11th Cir. 2000) (holding that, because "[t]he bankruptcy trustee is the legal representative of the bankruptcy estate," the debtor may not pursue a cause of action which is the property of the bankruptcy estate unless the trustee abandons the claim or participates in the cause of action).  *See also Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904-06 (6th Cir. 2012); *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215-16 (8th Cir. 1985).  Here, the trustee declined to pursue the claims, and without his participating in the adversary proceeding, Yelverton was not entitled to pursue the claims.  If the trustee had participated in the proceeding, he would have exposed the estate to any recovery by the District of costs if the District successfully defended the adversary proceeding.  By not participating, he avoided exposing the estate to that risk.

exclusive standing to administer the asset.  Specifically, when a debtor exempts only a set dollar amount of an asset, instead of exempting the property in its entirety, standing to administer the asset is *not* retroactively conferred on the debtor to administer the asset if the governing exemption statute does not alter the trustee's right to continue administering the asset. *See In re Salzer*, 52 F.3d 708, 712 (7th Cir. 1995) (under Indiana exemption statute, trustee continues to administer an exempted property until such time as its value is definitively determined not to exceed the amount of the claimed exemption).  This rule has been applied to civil actions for which the debtor has exempted a fixed dollar amount of the eventual proceeds.  A partially exempted lawsuit remains property of the estate, with the debtor only entitled to receive from the proceeds of the lawsuit the dollar amount exempted.  The exemption does not confer standing on the debtor to pursue the lawsuit.[21]

---

[21]  *See Jones v. Cendant Mortg. Corp. (In re Jones)*, 396 B.R. 638, 648 (Bankr. W.D. Pa. 2008); *In re Fetner*, 218 B.R. 262, 264-65 (Bankr. D.D.C. 1997) (exemption did not vest the debtor with control over pursuit of claims); *Ball v. Nationscredit Fin. Servs. Corp.*, 207 B.R. 869, 872 (N.D. Ill. 1997) and 201 B.R. 210, 214-15 (N.D. Ill. 1996) (under Indiana law, the trustee remained the party with standing to pursue the claims that were the subject of a partial exemption, and thus the debtor in *Ball* never became the party with standing to pursue the claims); *Bronner v. Gill (In re Bronner)*, 135 B.R. 645, 649 (9th Cir. BAP 1992) ("The Debtors' exemption was merely an interest in the lawsuit, a right to retain a sum of money up to $15,800; it was not an absolute right to retain the lawsuit itself or all proceeds from the settlement of the lawsuit.").

Yelverton's exemption of the claims was not an exemption of the entirety of the claims.[22]  It was only upon abandonment of the claims that Yelverton became entitled to pursue the abandoned claims against the District.  Even if the rule were different, and the partial exemption conferred standing on Yelverton to pursue the nonbankruptcy law claims against the District, then, as in the case of abandonment, any retroactive effect of the exemption would not roll back an expired statute of limitations clock to permit Yelverton's pursuit of the claims (either in an adversary proceeding (Adv. Pro. No. 10-10045) already dismissed before the exemption was claimed or in *this* adversary proceeding) to be timely.

VII

In accordance with the foregoing, it is

ORDERED that Yelverton's *Motion to Alter or Amend Decision Per FRCP, Rule 59(e)* (Dkt. No. 16) is DENIED.  It is further

ORDERED that if the bankruptcy court was not authorized to

_____

[22]  The civil action in *Ball* was dismissed on the basis that the debtor, who had exempted only a dollar amount of the claims, had lacked standing to commence the civil action.  To the extent that *Ball*, 207 B.R. at 873, suggests that standing must be tested as of the commencement of the action and cannot be cured by treating standing acquired later via an exemption of the entirety of the property as retroactively effective, that was unnecessary to its ruling, and disregards the rationale of such decisions as *Moses*.  The retroactive effect of standing acquired by reason of property re-vesting *in its entirety* in the debtor ought not vary depending on whether the re-vesting arose via abandonment or arose instead via exemption.

decide the *Motion to Alter or Amend Decision Per FRCP, Rule 59(e)*, this decision constitutes the bankruptcy court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1) regarding that motion.

[Signed and dated above.]

Copies to: All counsel of record.